In part 12 the trustees, after her death, are to possess and hold thenegro slaves for the uses, etc. Why is the word "increase" not here used? It is because by parts 10 and 16 the increase is given to the feme.
In part 13, where power is given to her to dispose by will, the term "increase" is omitted; and it was properly omitted, because, as to the increase, she needed no such power, that being already vested in her by part 10.
The doubt which the ingenuity of counsel have thrown upon this question is produced by referring the words profits by increase to the words negroesand increase, mentioned in 1, 3, and 4. It should be remembered that the last antecedent is in part 10, and immediately precedes the relative words,profits by increase. There is no rule better established than this, thatverba relata ad proximum antecedents referunt. If this rule be applied to the deed in question, which seems to have been drawn with uncommon accuracy, it will dispel all the doubts which have been raised by referring the term to a remote antecedent; for then, as clearly as can be spoken in our language, she will be entitled to profits by increase of the negroes, and no one inconsistency will be found in the whole deed, and every part of the deed where the word "increase" is used or omitted will be completely explained and accounted for.
As to the question whether she is barred of her distributive share of the property he acquired under this deed, it is to be remarked that contracts in prospect of marriage are of various kinds: some settle specific property; others covenant to pay money, or settle property or money. With respect to those which settle property specifically, some of them are in bar of the future claims of the wife, and some of them operate as a purchase of her fortune and future acquisitions. Such as operate in bar of her future claims have that quality, not merely because they are settlements of property in prospect of marriage; nor, indeed, do they derive any part of this quality from the consideration that they are settlements of property between the husband and wife, but solely and only from the consideration that the parties have agreed they shall be in bar of her future claims. And such agreement must be evidenced either by the express terms of the deed that they shall be in bar, and of what future claims particularly; for nothing will be barred unless included within the extent of the terms made use of. For instance, dower will not be barred by a marriage (274) *Page 242 
settlement, when it accrues by the death of the husband, unless it be mentioned in the deed that the settlement is to be in bar of her dower, or unless that meaning and intent is to be fairly inferred from the terms made use of in the deed. In C. D., 2 Vol. Chancery Dower, 3 E., it is laid down from Equity Cases, 152, that a woman shall not be restrained from having her dower where the husband makes a settlement upon her in consideration of the marriage portion, if it is not expressed to be in bar of dower, and it does not appear to be expressly intended. If a settlement by him of his estate, in consideration of her portion, will not bar her, how much less will she be barred when he settles nothing of his own upon her, and gets by the settlement half of her estate? 3 Atkins, 8; 2 Vernon., 365; E. Ca., 218, 219, support the principle that she is not barred of her dower unless by an agreement clearly expressed or plainly to be implied from the deed. The same principle applies with equal force, and is equally well supported in regard to her claims upon the personal estate — her distributive share, for instance; it is not barred by a settlement unless agreed to be so, and that agreement sufficiently expressed. In 3 Bro. Ch. C., 362, a leasehold estate was settled previous to marriage upon the wife, in recompense and bar of dower; and for a provision for the wife, the husband had no real estate; and the question was, whether this was a bar to the wife's claim of thirds; and L. Chancellor held it was not. Though mentioned to be for a provision for the wife, yet not being expressed to be in bar of her thirds, the necessary agreement to render it a bar did not appear. 2 Vernon, 725; 1 Atk., 439; 1 Vernon, 15, are to the same effect. Another circumstance very material in the present case is that there is no case to show that a settlement of the wife's estate on her, or of part of her estate on her, has ever been, by construction, made to be a bar where there are not express words. 3 P. W., 199; P. Ch., 63; 2 Vern., 58; 1 E. C. A., 70. There is no agreement, expressed nor to be implied from what is expressed in the deed now before us, for the purpose of barring any claim of the wife, whatsoever. There is no such thing hinted at; and if it be a true rule that she cannot be barred of her thirds unless there be an agreement for the purpose, then we may conclude that she is not barred of her thirds, a moiety, on his dying intestate.
Then the next question will be, Can he be considered as a purchaser of her fortune and future acquisitions under this deed? A man by making settlement on his wife may place himself in a situation to be considered in equity as a purchaser of her property; but then, in the first (275) place, he must make the purchase by a settlement on her of his *Page 243 
property, not her own. Secondly, it must be agreed that he shall be considered as a purchaser. Thirdly, there must be such words used as are sufficient to show it. For support of the first point, he cited 3 P. W., 199. In support of the second, he cited 1 Fonb., 692; Ambler, 692; 4 Viner, 40; P. Ch., 209; 1 Fonb., 310; 2 Vern., 68; 2 C. D., 390: "A husband settles a jointure suitable to the portion of his wife, which consists of choses in action, and, the inheritance settled, the husband dies, his executor shall not have those debts or the inheritance, without a special agreement for that purpose, though the husband left not otherwise assets for his debts." And in support of the third point, namely, that such words must be used in the deed as imply the property settled to be for her fortune, he cited 2 Vez., 677; 1 E. C. A., 170, 70, as to say, that he makes it in consideration of her fortune, or in lieu thereof. 1 Vernon, 7; 2 Vernon, 68, 501; 1 P. W., 378; 2 P. W., 608; 2 Atk., 448; 3 Atk., 20. There is no such agreement here, either expressed or implied; and, therefore, he cannot be considered as a purchaser. The settlement is not expressed to be made of his estate, in consideration of her fortune, but for and in consideration of a marriage, etc., and for settling land, negroes, etc., the estate of the said Jane Innis.
With respect to covenants to pay money: If they be covenants to pay after the death of the husband, and as he leaves her as much by will, or to devolve upon her, as her share, it is a performance or satisfaction of the covenant. 4 Atk., 419; 2 Vern., 709; 1 Vezey, 1; 1 Vez., 520. But if the covenant be performable in his lifetime, this a debt, and debts are to be paid first, and the surplus divided; and then she is to be paid, and to divide the surplus, also. 1 P. W., 324; 1 Bro. C. Ch., 63; 2 Bro. C. Ch., 394; 2 Bro. C. Ch., 95. Here is no covenant for payment of money in the lifetime of the husband; and the only consideration remaining is whether there be anything given to her in satisfaction of her claims. He has covenanted, indeed, after his death, that his executors shall pay her £ 120 per annum for her life. It will not be pretended that this covenant was to be as a purchase of or in bar of her future claims. It was covenanted for the reasons and considerations expressed as the causes of that deed; and it has never been performed, for it is admitted by the pleadings to be in arrear, and it is hardly denied that he had nothing wherewith to pay it; and for one thing to be in satisfaction of another, it must be of equal value. 2 V., 37, 409; 2 Vern., 478; 2 Bro. C. Ch., 100; 2 Fonb., 326; 4 V., Jr., 391. It must be of the same nature. 1 V., 521; 1 P. C., 394; 2 Fonb., 327. And it must be equally certain. 1 V., 521; 2 V., 636; P. Ch., 394; 1 P. W., 408; 2 P. W., 553, 616; 1 V., 126; 2 Atk., 300; 3 P. W., 227; 1 P. W., 410 (14th ed.). The lot, wharf and island do not answer this description; her interest therein is contingent, depending upon his death before hers. (276) *Page 244 
It is also for her life only, whereas her moiety is forever. They are of different natures, for one is realty and the other personalty; and they are of very different values. How can property to the value of £ 100 ever be presumed to be in satisfaction of claims to property for £ 10,000? She is entitled to the annuity, because he has neither given nor left her any property equivalent thereto; and she is entitled to her distributive share, because there is nothing even, setting aside the necessity for anagreement, that the settlement should be in bar which he has given of his in exchange for her claims. She never had any interest in the lot, wharf and island, because she survived the husband.
As to the objection that the husband's trust estate is not subject to the act of distributions, a trust estate in personalties is as much subject to distribution on the death of the intestate owner as a legal estate in personalties is. 2 Fonb., 15; 2 Atk., 296, 299; 1 Vernon, 204; 1 P. W., 109; 1 Vez., 237.
The cases cited on the other side belong to distinct classes. Some of them are cases where the husband has been considered as a purchaser by making an equivalent settlement. Such are 1 Fonb., 92; 2 Vernon, 58; 4 Viner, 40; Pre. Ch., 209, 63, 312; 3 P. W., 199. These respect his claim of that which was hers, not her claim, as in the present case, of that which was his, and are therefore inapplicable. Some are cases of satisfaction, where the question is whether the wife's share shall be a discharge of that which was covenanted? Such are 2 Vern., 709; 1 P. W., 324; 3 Atk., 419; 1 Vezey, 1; 2 Bro. C. Ch., 95, 394. Here it is contended that she is barred of her share; not that it is a bar of any covenants he has made; they are, therefore, equally inapplicable. Others, again, are cases of performance of covenants for the payment of money to be made after the husband's death, and which are deemed to be performed by a share of equal value coming to the wife — such as Vezey, 520. But here they contend that no share comes to her. Every case of purchase of her portion, satisfaction or performance of covenants must be laid aside; they are arranged. 2 C. D.; 2 Mont. 10; 3 D., 2. The cases which can be properly cited are those only which tend to prove that a settlement on the wife is of her claim to a distributive share of her husband's estate; and every case of that class will be found to stand upon this principle: that the wife has agreed to accept of the settlement in bar of her share, and that such agreement is expressed or sufficiently implied in the deed of settlement. A settlement alone even of the husband's estate will not bar her. The case in 1 Atkins, 439, is expressed to be in bar; and the Lord Chancellor relied upon this, which he need not (277) have done if the settlement of itself was a bar. The same remarks apply to 2 Vernon, 724; 1 Vernon, 15; 1 Vez., 55. The Lord Chancellor thought it would be in bar of all she could claim as widow *Page 245 
if the deed had said the settlement was for a jointure. The same principle prevails in cases of dower: she cannot be barred, although there be a settlement, unless expressed to be in bar. 2 Vernon, 365; E. C. A., 209; 3 Atk., 8; Ress. E. C., 152.
seemed to think it was needless to consider whether or not the feme was entitled to the increase of the negroes, for the deed directs that at her death she may dispose of half, etc., and the other half or remaining part of the said lands, negroes, and other the personal estate of the said Jane Innis, to the use and behoof of the said Francis, etc., part 14; and, therefore, if she was entitled to the increase, besides the half which she might dispose of by will, etc., that was a part of her personal estate, and belonged under this clause to the husband. He seemed to think, also, she was barred of her distributive share by the settlement.
HALL, J., thought that profits by increase of negroes mentioned in part 10 and part 16 did not mean the young negroes born after the making of the deed; and as to her distributive share, he thought that all which either party could claim was fixed unalterably by the deed, and that she was not entitled to claim any more than that had assigned.
Counsel of plaintiff, perceiving the opinion of the Court, dismissed his bill and commenced his suit de novo in the Circuit Court of the United States.